IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ELITE PROTECTIVE SERVICES, INC., | * |
| | * |
| Plaintiff, | * |
| | *   Civil Action No. 8:22-cv-01126-PX |
| v. | * |
| | * |
| INTERNATIONAL GUARDS UNION | * |
| OF AMERICA, LOCAL 154, | * |
| | * |
| Defendant. | * |
| | *** |

**MEMORANDUM OPINION**

Pending in this arbitration action are Plaintiff Elite Protective Services, Inc. ("Elite")'s motion to vacate an arbitration award and Defendant International Guards Union of America (the "Union")'s motions to dismiss this action as untimely and confirm the award. ECF Nos. 5, 10, & 11. The Court has reviewed the pleadings and finds no need for a hearing. Loc. R. 105.6. For the reasons discussed below, the Court denies the Union's motion to dismiss, denies Elite's motion to vacate, and grants the Union's motion to confirm the award.

**I.     Background**

The following facts are undisputed. Elite provides security services for federal government facilities in the Washington, D.C. area. The Union represents Elite's employees who work at a facility in Hyattsville, Maryland. Elite and the Union are parties to a collective bargaining agreement ("CBA") in effect from May 1, 2020, through April 30, 2023. ECF No. 10-5.

The CBA outlines the grievance procedure that governs disputes between Elite and the Union. *Id.* at 15-16. If Elite and the Union are unable to resolve their differences through the CBA's internal grievance process, then the Union may "refer the grievance to arbitration." *Id.* at

16. Under the CBA, if the parties cannot agree on an arbitrator, "then the Union may file for arbitration with the Federal Mediation Conciliation Service" ("FMCS"). *Id.* at 17. In that circumstance, "[t]he arbitration . . . shall be handled in accordance with [FMCS'] 'Voluntary Rules of Labor Arbitration.'" *Id.* As to resolution in arbitration, the CBA requires the arbitrator to demonstrate that he "has thoroughly considered the arguments in advance, by each party and cite the provisions of the Agreement, serving as the basis for the decision." *Id.*

On May 18, 2021, a Department of Homeland Security ("DHS") contracting officer notified Elite that certain of its Protective Security Officers ("PSOs") had falsified training certifications for a training program the officers did not in fact attend. ECF No. 10-7 at 2. Elite subsequently fired the specific PSOs and began investigating others suspected of similar conduct. ECF No. 10-4 at 5.

As part of its investigation, on May 28, 2021, Elite met with PSO Joseph Addison, who had not been named in the DHS letter but who had worked for Elite for nearly eight years at a Department of Treasury facility in Hyattsville. ECF No. 10-6 at 55. Elite's Operations Manager, Justin Katz, and attorney, Rene Sandler, conducted the meeting, during which Addison supposedly confessed to falsifying training documents. ECF No. 10-4 at 5-6; ECF No. 10-6 at 8, 55. Addison was fired on June 18, 2021, prompting the Union to file a grievance with Elite on his behalf, asserting that he was terminated without "just cause" in violation of the CBA. ECF No. 10-4 at 6.

On January 26, 2022, per the CBA, the grievance proceeded to an arbitration hearing before FMCS Arbitrator Richard Trotter (the "Arbitrator"). ECF No. 10-6 at 3. Three witnesses testified—Katz, Addison, and contract manager Gerald Johnson. *Id.* Katz recounted Addison's supposed confession during the May 28 meeting. Johnson further testified that Addison had not

attended the mandatory training.  *Id.* at 67-68.  Although the Union attempted to ask Katz about attorney Sandler's participation in the meeting with Addison, the Arbitrator sustained Elite's objection on attorney-client privilege grounds.  *Id.* at 52.[1]  The Union also successfully objected to the introduction of testimony and evidence concerning the internal investigation into other PSOs.  *Id.* at 23-24, 27.  In post-hearing briefing, Elite took exception to these evidentiary rulings.  ECF No. 10-8 at 4-9.

On April 8, 2022, the Arbitrator issued a 28-page "Opinion and Award" (the "Award"), which included detailed findings of fact and conclusions of law.  *See generally* ECF No. 10-4.  The Arbitrator found in favor of Addison, concluding that Elite had terminated Addison without just cause, in violation of the CBA.  As relief, the Arbitrator ordered Elite to reinstate Addison "effective immediately with full back pay, commensurate benefits, [and] seniority credit[.]"  *Id.* at 28.  In so concluding, the arbitration decision cited liberally to a similar arbitration decision that found in favor of the Union as to another terminated PSO, Paul Ogordi, on identical grounds.  *Id.* at 27.

Clearly displeased, Elite next filed suit in this Court, seeking to vacate the Award under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA").  *See generally* ECF No. 1.  Elite contends that vacatur is warranted because the Arbitrator "engaged in misconduct and misbehavior" by drawing an adverse inference from Elite's decision to not call Sandler as a witness; that the Award violates public policy by undermining Elite's attorney-client relationship with Sandler and that this violation amounts to "egregious error"; that the Award "fail[ed] to draw its essence from the collective bargaining agreement" and the Arbitrator "exceeded the limits of his authority as established" in the CBA; that the Arbitrator violated the

---

[1] Sandler was one of the attorneys representing Elite at the arbitration hearing.  ECF No. 10-6 at 3.

provision in the CBA requiring full consideration of the parties' arguments; and that the Arbitrator failed to base his decision on "evidence and testimony," in contravention of 29 C.F.R. § 1404.13, when he drew an adverse inference from Elite's failure to call Sandler as a witness.

On July 15, 2022, the Union moved to dismiss the Complaint on limitations grounds and to confirm the Award. ECF No. 5. Elite opposed the motion (ECF No. 8) and separately moved for summary judgment on the propriety of vacating the Award. ECF No. 10. The Union cross-moved for summary judgment, addressing Elite's grounds for vacatur and why, in its view, the Award must be confirmed. ECF No. 11.

The Court first addresses the Union's motion to dismiss the action as time barred.

## II.     The Union's Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). At the motion-to-dismiss stage, the Court may "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal citations omitted); *see also Bowman v. Jack*

*Cooper Transp. Co. Inc.*, 399 F. Supp. 3d 447, 451 (D. Md. 2019) (considering CBA and arbitration decision attached to motion to dismiss).

The Union contends that dismissal is warranted because Elite filed this suit beyond the applicable limitations period. ECF No. 5-1 at 3-5. Because the operative federal statute includes no express limitations period, the Court must look to the statute of limitations applicable to the most analogous state law claim. *Int'l Longshoremen's Ass'n, AFL-CIO v. Cataneo Inc.*, 990 F.2d 794, 799 (4th Cir. 1993). Under Maryland law, a petition to vacate an arbitration award must be filed within 30 days of delivery of the award. *Id.* at 799-800 n.10 (citing Md. Code. Ann., Cts. & Jud. Proc. § 3-224).

The Arbitrator delivered the Award by email on April 8, 2022. ECF No. 5-3 at 2. From this, the Union argues that the deadline to file this case was therefore Sunday, May 8, 2022. ECF No. 5-1 at 5. However, the Federal Rules of Civil Procedure make clear—and the Union does not contest—that where the last day to file falls on a weekend or holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1); *see also* Md. R. 1-203(a)(1). Because Elite filed this action on the following Monday, May 9, 2022, it is timely. Accordingly, the Union's motion to dismiss (ECF No. 5) is denied.

The Court next turns to whether the Award must be confirmed or vacated.

### III.   Cross Motions for Summary Judgment

In the cross motions for summary judgment, Elite asks the Court to vacate the Award while the Union asks to confirm it. ECF Nos. 10 & 11. Notably, "judicial review of an arbitration award is 'extremely limited,' and is, in fact, 'among the narrowest known to the law.'" *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (quoting *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000)). For

5

labor arbitration awards, judicial review "is not merely limited but very limited." *PPG Indus. Inc. v. Int'l Chemical Workers Union Council of UFCW*, 587 F.3d 648, 652 (4th Cir. 2009) (internal quotations and citation omitted).  When an arbitrator interprets a collective bargaining agreement, the court "examines only whether that interpretation 'draw[s] its essence from the contract and [does not] simply reflect the arbitrator's own notions of industrial justice.'" *Westvaco Corp. v. United Paperworks Int'l Union, AFL-CIO ex rel. Loc. Union 676*, 171 F.3d 971, 974 (4th Cir. 1999) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 975.

Courts reviewing labor arbitration awards under the LMRA look to the Federal Arbitration Act ("FAA") for guidance.  *See, e.g.*, *Howard Univ. v. Metro. Campus Police Officers' Union*, 519 F. Supp. 2d 27, 36 n.5 (D.D.C. 2007) (citing *Misco*, 484 U.S. at 40 n.9), *aff'd* 512 F.3d 716 (D.C. Cir. 2008)).  The FAA, in turn, authorizes vacatur in such narrowly circumscribed situations as "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).  Courts also may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The party seeking vacatur bears a "heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds." *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007).

Elite advances six grounds for vacating the Award. ECF No. 10-1 at 11-19. Five of the six grounds align identically with those recently addressed in *Elite Protective Servs., Inc. v. Int'l Guards Union of Am., Local 154*, No. TJS-22-0974, 2023 WL 2185672 (D. Md. Feb. 23, 2023) ("*Elite I*"). In *Elite I*, the court was asked to confirm the arbitration decision involving the termination of PSO Paul Ogordi under identical circumstances as Addison. *Id.* at *2-3. Like Addison, Ogordi supposedly confessed to Sandler and Katz that he had fabricated training certificates, and as here, the parties vigorously disputed whether Sandler could be called as a witness at the hearing. *Id.* at *4-5. Also, as in this case, the arbitrator ultimately found in favor of the PSO, concluding that Ogordi had been fired without just cause and directing that Elite reinstate him. *Id.* at *4-6.

In a thorough and well-reasoned decision, the *Elite I* court granted the Union's motion to confirm the arbitration award. In so doing, the court concluded that none of Elite's claimed grounds for vacatur were "serious enough to constitute misconduct and misbehavior" under the FAA. *Id.* at *9. Nor was the court persuaded that the arbitrator's decision to draw an adverse inference from Elite not calling Sandler as a witness violated the attorney-client privilege, "or any other attendant public policy so well-defined that might warrant vacatur." *Id.* The court also rejected any argument that the arbitrator's evidentiary decisions reflected a manifest disregard for the law. *Id.* at *10 (citing *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 479, 483 (4th Cir. 2012)).

The Court agrees with the sound analysis in *Elite I* and fully incorporates it here. *See generally Elite I*, 2023 WL 2185672. The underlying arbitration awards in both cases are near identical—indeed, the Arbitrator here borrowed heavily from the arbitration decision concerning PSO Ogordi (ECF No. 10-4 at 27), and the parties advance identical arguments regarding vacatur

of the arbitration awards.  Accordingly, this Court adopts the reasoning of *Elite I* and rejects Elite's plea for vacatur of the Award.

Elite presses one additional ground for vacatur not litigated in *Elite I*—that because the Arbitrator did not adequately address Elite's post-hearing arguments regarding Johnson's corroboration of Addison's confession and the exclusion of evidence related to other PSOs, the Award violates the CBA.  ECF No. 10-1 at 19-24.  This is so, says Elite, because the CBA requires that the Arbitrator "demonstrate that he has thoroughly considered the arguments in advance, by each party and cite the provisions of the Agreement, serving as the basis for the decision."  ECF No. 10-5 at 17.

Elite's contention is wholly unsupported.  The CBA requires only that the Arbitrator *consider* its arguments, no more.  Accordingly, this Court must determine whether the Arbitrator took Elite's position into account—not whether it agrees with the wisdom of the Arbitrator's decisions.  In this way, the CBA aligns well with the mandate of the FAA that this Court must simply "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it."  *See PPG Indus.*, 587 F.3d at 652.

The Award plainly supports that the Arbitrator had not failed to consider Elite's arguments.  The Award thoroughly summarizes each of the arguments that Elite now claims the Arbitrator had ignored.  ECF No. 10-4 at 9-10 (Elite should have been permitted to introduce evidence regarding the investigation of "other employees"); 10 ("verbal acts" evidence should have been admitted as non-hearsay); and 10-11 (Johnson testimony corroborates that Addison falsified training certificates).  And even though the Award did not precisely discuss each of the arguments to Elite's satisfaction, the Arbitrator made clear that he based his decision on the totality of the evidence and found that Elite had "not met its burden of proof by a preponderance

of evidence that [Addison] was in fact guilty of the offense of falsification of training certifications." *Id.* at 28. This necessarily includes an assessment of the weight and credibility of Johnson's testimony. The Award also expressly credited the Union's position that Addison's "case should be treated individually," thereby rejecting Elite's contention as to the relevance of other PSO misconduct. *Id.* at 24-26. In short, the Arbitrator considered each of Elite's arguments as required under the CBA. Thus, Elite has provided no justification for this Court to vacate the Award. The motion is denied.

As to the Union's motion to confirm the Award, the FAA teaches that the Court must grant confirmation "unless the award is vacated, modified, or corrected[.]" 9 U.S.C. § 9. Elite essentially recognizes as much, arguing solely that the Award should not be confirmed because it must be vacated. ECF No. 14 at 16. Because the Court has considered and rejected Elite's stated grounds for vacatur, the Court sees no basis to deny confirmation. *See Howard Univ.*, 519 F. Supp. 2d at 39 (denying motion to vacate under the LMRA and confirming arbitration award). The Court thus grants the Union's motion and confirms the Award.

Last, the Union requests that the Court award reasonable attorneys' fees because Elite's motion to vacate was "unjustified." ECF No. 11-1 at 21. It is well-established that the Court may award attorneys' fees against a party who challenges an arbitration award "without justification." *See United Food and Commercial Workers, Local 400 v. Marval Poultry Co., Inc.*, 876 F.2d 346, 350 (4th Cir. 1989). When the challenge concerns "the fundamental issues of arbitrability or of whether an arbitration award draws its essence from the contract, the standard for assessing its justification is indeed the relatively lenient one of whether it has any arguable basis in law." *Id.* at 351 (internal quotations omitted).

Although Elite did not prevail, its challenge was not "so frivolous as to be entirely without justification." *Accord Elite I*, 2023 WL 2185672, at *12.  The Union presses that Elite's two challenges to identical adverse arbitration awards amount to litigating in "bad faith."  ECF No. 11-1 at 23-24.  But this seems more a function of neither party moving to consolidate the actions rather than some gamesmanship on Elite's part.  *See* Fed. R. Civ. P. 42(a)(2) (permitting consolidation of actions involving commons questions of law or fact).  The Court will not impute "bad faith" onto Elite where the Union was equally capable of seeking consolidation but chose otherwise.

### IV.     Conclusion

For the foregoing reasons, the Union's motion to dismiss (ECF No. 5) is denied, Elite's motion for summary judgment (ECF No. 10) is denied, and the Union's cross-motion for summary judgment (ECF No. 11) is granted in part and denied in part.  The Award is confirmed.  The Union's request for attorneys' fees is denied.

<u>March 9, 2023</u>                                                   <u>         /s/                                      </u>
Date                                                                           Paula Xinis
                                                                                    United States District Judge